## SMOKE v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Second Circuit. December 12, 1911.)

### No. 73.

RAILROADS (§ 350*)—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.

Whether plaintiff, who was injured while driving across defendant railroad company's tracks at a grade crossing, was guilty of contributory negligence, *held*, under the evidence, a jury question.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1166; Dec. Dig. § 350.*]

Lacombe, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by John Smoke against the Pennsylvania Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

On writ of error to review a judgment for costs entered in favor of the defendant upon a verdict directed by the court at the close of plaintiff's testimony.

Morris Cukor, for plaintiff in error.

Burlingham, Montgomery & Beecher (George H. Emerson and Norman B. Beecher, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The action was brought by the plaintiff to recover damages for personal injuries alleged to have been sustained by him through the defendant's negligence on September 17, 1907, while he was driving across the defendant's tracks at a grade crossing at Colonia Station in New Jersey.

The verdict was directed for the defendant upon the sole ground that the proofs showed that the plaintiff was guilty of contributory negligence. The only question, therefore, is—Was the plaintiff guilty of contributory negligence as matter of law? If the case had been submitted to the jury and they had found for the plaintiff, would it have been the duty of the court to set aside the verdict as against the weight of evidence? If so, the ruling of the court was correct; if not, the facts should have been submitted to the jury.

In a sense the facts were undisputed, but the inferences to be drawn therefrom were conflicting and disputed. The accident took place at a grade crossing where four tracks of the defendant cross the highway. The only testimony bearing directly upon the accident was from the plaintiff himself. On the afternoon of September 17, 1907 he was on his way home, driving a team of work horses with a heavy wagon on St. George's avenue. When within about 30 feet of the first track the plaintiff noticed a train going eastward toward New York. He stopped and waited for the train to pass and for the smoke to disappear and then he looked towards New York and towards the station, in both directions. Seeing and hearing nothing he started

towards the tracks and again while upon the tracks he continued to look in both directions and to listen. He heard no bell rung and no whistle blow. When the horses' feet were between the second and third tracks he saw a train approaching from the west. This train turned out to be a passenger train going at about 50 miles an hour and is alluded to in the briefs as the "Chicago Limited." There is a curve to the westward of the station, but an unobstructed view is had of about 1,500 feet. The plaintiff testified that he first saw the train when it was "200 or 300 steps" away and when his horses' front feet were between the second and third tracks. Seeing the danger at this point he concluded that his best chance for safety was to back the team as the train was approaching upon a curve and it was impossible for him to tell upon which of the tracks it was proceeding. The horses were heavy work horses and it was difficult for him to back them. The plaintiff testified further as follows:

"Q. How far would you say the train was from you at the time when you first saw it? A. I can't tell you sure, about 200 or 300 steps. Q. Did you know what track it was coming on? A. No, I don't know because there is a big curve and when the train comes in this curve we don't know which track he is coming. It is not straight; there is a big curve. You have to look both sides; you don't know what to do with the horse. Q. At that time was there any gate at that crossing? A. There was not. Q. Was there any flagman or any watchman there? A. No."

The plaintiff and the team were struck, resulting in serious injuries. The non-suit was granted upon the theory that there was an unobstructed view of 1,530 feet, that the plaintiff was presumed to have good eyesight and that without looking he deliberately drove into danger. He testified that no bell was rung and no whistle was blown and that while he was looking alternately east and west he did not see the approach of the engine until it was "200 or 300 steps" away. The figures as to distance—1,500 feet—are taken from the decision of the trial judge.

It must be remembered that contributory negligence is a defense in the federal courts to be established by the defendant by a preponderance of proof. We are not satisfied that the defense has been established as matter of law. Unquestionably the crossing was a dangerous one. At the time of the accident there were no gates and no flagman there, although it is asserted that a flagman was placed there after the accident. It is undisputed that no bell was rung and no whistle was sounded upon the engine. These omissions, it is true, bear principally upon the negligence of the defendant, but they have a bearing upon the conduct of the plaintiff as well. Knowing the obligation of the defendant to give warning signals before reaching the crossing and hearing none, the plaintiff was justified in assuming that an express train was not so near and in acting accordingly. We are inclined to think that too severe a view was taken of the plaintiff's action. Assuming that he should have seen the train when the engine first came around the curve, what would he have done that he did not do? The horses were then halfway across the tracks and the engine was 1,500 feet away. Concededly he had but 15 or 16 seconds in which to act. He was confronted with a sudden peril and great coolness

of judgment under such circumstances is not to be expected. It is perhaps possible that his better course would have been to have whipped up his horses and endeavored to cross the track, but he had but a few seconds in which to decide and it cannot be said that his decision to back the horses off the track was in itself contributory negligence. The presumption is that a young man possessed of all his faculties and of ordinary common sense will in such circumstances use his best judgment to save himself and his team.

Even if it be assumed that he made a mistake it cannot be imputed to him as negligence. When a railroad company operating a four-track road runs trains at the rate of nearly a mile a minute around a sharp curve and across a highway at grade, without gates, or watchman or signal of any kind, the party who, driving a team of work horses, is run down in the center of the tracks is entitled to have the question whether he could have saved himself in 16 seconds passed upon by a jury.

It is true that upon the facts the proposition is a close one, but we think there was sufficient question as to the wisdom and propriety of the plaintiff's conduct at the time to warrant its submission to the jury.

The judgment is reversed with costs.

LACOMBE, Circuit Judge (dissenting). I am unable to concur in the opinion of the majority. The testimony shows that the unobstructed view to the westward, when taken not from level of the track but from the level of the driver's seat, was not 1,500 feet but 2,920 feet, nearly half a mile. There is no contradiction of this, the testimony was given by plaintiff's own witness who took observations and made measurements for the purpose of testifying. I find no evidence that the train was going sixty miles an hour; counsel in arguing the motion to dismiss, stated that it was the Chicago Limited going "probably fifty" miles an hour; since that statement was not contradicted possibly it may be taken as conceded. Plaintiff did not see the train till it was 200 or 300 steps away from him. To my mind the evidence is convincing that after he started from his position of rest to cross the track, he kept no such lookout as he should have done for approaching trains, or he would have discovered this one long before it reached a point within 200 or 300 steps of him.